# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| QBE Insurance Corporation, | ) |
| Plaintiff, | ) |
| v. | ) |
| Corrie Burckhard, as Personal Representative for the estate of Todd Burckhard; Maria Mack, as Personal Representative for the estate of Blaine H. Mack; BNSF Railway Company, a Delaware corporation; CUSA ES, LLC, d/b/a Coach America Crew Transport; and Timothy P. Rennick, | ) **AMENDED ORDER GRANTING BNSF AND COACH AMERICA'S MOTION FOR SUMMARY JUDGMENT AND DENYING QBE INSURANCE'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants, | ) |
| v. | ) |
| BNSF Railway Company, a Delaware Corporation and CUSA ES, LLC, d/b/a Coach America Crew Transport, | ) Case No: 4:13-cv-125 |
| Counter-Claimants, | ) |
| v. | ) |
| QBE Insurance Corporation, | ) |
| Counter-Defendant. | ) |

Before the Court are cross-motions for summary judgment filed by the Plaintiff and Counter-Defendant QBE Insurance Corporation ("QBE Insurance") and Defendants and Counter-Claimants BNSF Railway Company ("BNSF") and CUSA ES, LLC d/b/a Coach America Crew Transport ("Coach America") on June 15, 2016. See Docket Nos. 104 and 110. QBE Insurance and BNSF/Coach America contemporaneously filed responses to the opposing party's motion on

July 22, 2016. See Docket Nos. 114 and 115. For the reasons set forth below, BNSF and Coach America's motion for summary judgment is granted and QBE Insurance's motion for summary judgment is denied.

I.  **BACKGROUND**

This case arises out of an underlying action in which Corrie Burckhard, as Personal Representative for the Estate of Todd Burckhard, and Maria Mack, as Personal Representative for the Estate of Blaine H. Mack filed suit against BNSF and Coach America to recover for the wrongful deaths of their husbands. See Case No. 4:13-cv-038 (D.N.D. March 28, 2013). On August 19, 2011, Timothy P. Rennick was driving a motor vehicle and transporting the decedents, Todd Burckhard and Blaine Mack, both employees of BNSF, to Glasgow, Montana. While traveling west on Highway 2, a vehicle driven by Ronald Keiser collided with the vehicle Rennick was driving. As a result of the collision, both Burckhard and Mack were killed. At the time of the accident, Keiser had an insurance policy with QBE Insurance Corporation ("QBE Insurance").

On November 1, 2013, QBE Insurance Corporation filed this interpleader action in an effort to resolve any claims against it arising from the underlying action. See Docket No. 3. Coach America and BNSF filed a counterclaim against QBE Insurance on April 11, 2014. See Docket No. 13. In their counterclaim, BNSF and Coach America sought a declaration as to the allocation of the QBE Insurance policy proceeds (count 1) and alleged claims against QBE Insurance for violations of unfair trade practices under Montana law, common law bad faith, indemnification, and attorney's fees (counts 2 through 5). On October 17, 2014, the Court dismissed without prejudice counts 2 through 5 of Coach America and BNSF's counterclaim against QBE Insurance. See Docket No. 46.

2

The underlying action proceeded to trial on December 11, 2014. See Docket No. 167 (Case No. 4:13-cv-038). At the conclusion of eight days of trial, the jury returned a verdict and found BNSF was negligent under FELA and such negligence caused the deaths of Todd Burckhard and Blaine Mack. The jury awarded damages in the amount of $2,668,943.00 to Corrie Burckhard and damages in the amount of $987,690.00 to Maria Mack. The jury further found Coach America and/or its employee, Timothy Rennick, were negligent, but such negligence did not play a substantial role in causing the deaths of Todd Burckhard and Blaine Mack. After conclusion of the jury trial in the underlying action, Coach America and BNSF then filed a renewed counterclaim against QBE Insurance on February 18, 2015. See Docket No. 49. In this second counterclaim, Coach America and BNSF allege QBE Insurance's policy is subject to stacking in count 1, and asserted claims against QBE Insurance for unfair trade practices (count 2), common law bad faith (count 3), tort of another doctrine (count 4), and attorney's fees (count 5) .

On November 9, 2015, the Court dismissed count 4 ("tort of another doctrine") and count 5 (attorney's fees) of Coach America and BNSF's renewed counterclaim. See Docket No. 83. However, the Court declined QBE Insurance's request to dismiss count 1 (declaratory relief) of the renewed counterclaim. See Docket No. 85. QBE Insurance then requested the Court reconsider the portion of its November 9, 2015, order that did not dismiss count 2 and count 3 of Coach America/BNSF's renewed counterclaim. See Docket No. 88. Alternatively, QBE Insurance asked the Court to bifurcate Coach America/BNSF's claims against QBE Insurance for unfair trade practices and common law bad faith from Coach America and BNSF's claim the policy QBE Insurance issued to Keiser is subject to stacking of liability coverages. The Court denied reconsideration. See Docket No. 101. In its order denying QBE Insurance's motion to reconsider, the Court, recognizing the need to resolve the stacking of liability coverages, ordered the parties

3

to "file simultaneous briefs addressing the stacking of liability coverages on or before June 15, 2016, that set forth their positions and arguments for the same." See Docket No. 101, p. 6. The parties' cross motions for summary judgment are now before the Court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire into whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The non-moving party may not rely merely on allegations or denials; rather, it must set out specific facts showing a genuine issue for trial. Id.

## III. LEGAL DISCUSSION

In its motion, QBE Insurance contends that BNSF, Coach America, Mack, and Burckhard lack 'standing' to seek the stacking of liability coverages of the policy QBE Insurance issued to

4

Keiser. Alternatively, QBE Insurance argues the policy issued to Keiser is not subject to stacking of liability coverages and has a limit of $300,000 because Montana courts have rejected the stacking of liability coverages. Coach America and BNSF disagree and contend the policy is subject to stacking of liability coverages. According to Coach America and BNSF, the stacked policy limit is $1.5 million, the aggregate of $300,000 liability coverage limits for each of the five vehicles insured under the policy. In support of their contention that liability coverages for the separate vehicles stack, BNSF and Coach America cite to several recent Montana state district court decisions in which claimants were permitted to stack liability coverages. See Gunderson v. Safeco Ins. Co. of Ill., No. BDV-16-133 (Mont. 8th Judicial Dist. Sep. 1, 2016); Safeco Ins. Co. of Ill. v. Petersen, No. DV-29-14-70 (Mont. 5th Judicial Dist. Oct. 5, 2015); Great Northwest Ins. Co. v. Erickson, No. DV-13-32 (Mont. 22nd Judicial Dist. Jan. 15, 2014). However, QBE Insurance contends this court should instead follow the Montana Supreme Court's decision of *Christensen v. Mountain West Farm Bureau*, 22 P.3d 624 (Mont. 2000) as it is the binding precedent on stacking liability coverages in Montana.

It is undisputed that at the time of the collision, Keiser was insured by a policy issued to him by QBE Insurance. The policy covered four separate vehicles.[1] See Docket Nos. 108-1, pp. 18-20 and 148-1. For each of the four vehicles, the policy provides liability limits of "$300,000 each accident." Id. The policy also lists separate premiums for liability coverage for each vehicle covered by the policy. Id. In "Section II – Liability Coverage," QBE Insurance agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an "accident" and resulting from the ownership,

---

[1] On July 28, 2017, QBE Insurance filed a motion to amend the Court's order of July 18, 2017. See Docket No. 147. In support of its motions, QBE filed a change endorsement, which it omitted from its original briefing, that evidenced only four vehicles were covered by the insurance policy at issue on the date of the collision. See Docket No. 148-1.

5

maintenance, or use of a covered 'auto.'" Id. at 34. A covered "auto" included the auto which Kesier was driving at the time of the collision. The Court is tasked with determining whether the liability limits of the policy issued by QBE Insurance to Keiser is subject to stacking under Montana Law. In other words, whether the policy limit for the collision is $300,000 or $1.2 million, the aggregate of $300,000 liability coverage limits for each of the four vehicles insured under the policy.

The Court begins its analysis by considering Montana's 'anti-stacking' statute, including its legislative history. Prior to 2007, Section 33-23-203 of the Montana Code Annotated, commonly referred to as an 'anti-stacking' statute, prescribed the limitations of liability in insurance policies as follows:

> (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:
>
> . . .
>
> (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident.

Mont. Code Ann. § 33-23-203 (1997). In 2003, the Montana Supreme Court concluded then Section 33-23-203 violated substantive due process and was unconstitutional "to the extent that it allow[ed] charging premiums for illusory coverage." Hardy v. Progressive Specialty Ins. Co., 67 P.3d 892, 899 (Mont. 2003). The *Hardy* court considered the question of whether it was against Montana public policy to charge separate premiums for underinsured motorist coverage ("UIM coverage") for separate vehicles on the same policy when the insured may only recover one amount of coverage. Section 33-23-203 permitted insurance companies to charge premiums for illusory

6

coverage because, even though an insured paid separate premiums for UIM coverage for separate vehicles, the insurer could limit the insured's recovery to the UIM coverage applicable to one vehicle. Therefore, the insured did not receive the benefit of the UIM coverage for other vehicles for which the insured paid a premium. Ultimately, the Montana Supreme Court determined this arrangement as permitted in Section 33-23-203 was unconstitutional because it permitted insurers to "receive valuable consideration for coverage that is not provided. . . ." Id.

After the Montana Supreme Court's decision in *Hardy*, the Montana Legislature enacted the current version of Section 33-23-203, which provides in relevant part:

> (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:
>
> > (a) the limits of insurance coverages available for any one accident are the limits specified for each coverage available under the policy insuring the motor vehicle involved in the accident;
> >
> > (b) if the motor vehicle involved in the accident is not insured under a policy, the limits of the insurance coverages available for any one accident are the highest limits of the coverages specified under one policy for one motor vehicle insured under that policy; and
> >
> > (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.
>
> (2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, reductions of coverage, or subrogation clauses that are designed to prevent duplicate payments for the same element of loss under the motor vehicle liability policy or under another casualty policy that provides coverage for an injury that necessitates damages or benefit payments or to prevent the adding together of insurance coverage limits in one policy or from more than one policy issued by the same company.

7

(3) An insurer that charges a premium for a specified coverage shall clearly inform or notify the insured in writing of the limits of the coverage with respect to the premium charged and whether the coverage from one policy or motor vehicle may be added to the coverage of another policy or motor vehicle.

Mont. Code Ann. § 33-23-203 (2017). Section 33-23-204(2) of the Montana Code Annotated defines "motor vehicle liability policy" as:

[A] policy of automobile or motor vehicle insurance against liability required under Title 61, chapter 6, parts 1 and 3, and all additional coverages included in or added to the policy by rider, endorsement, or otherwise, whether or not required under Title 61, including, without limitation, uninsured, underinsured, and medical payment coverages.

Mont. Code Ann. § 33-23-204(2) (2017).

The Montana Supreme Court has not yet had an opportunity to directly apply Section 33-23-203, as revised, to liability coverages. Nonetheless, QBE Insurance believes the Montana Supreme Court has determined stacking does not apply to liability coverages and directs the Court to the Montana Supreme Court decision of *Christensen v. Mountain W. Farm Bureau Mut. Ins. Co.*, 22 P.3d 624 (Mont. 2000). In *Christensen*, the court was tasked with determining whether two policies issued by the insurer may be stacked to provide the maximum coverage available under each policy. 22 P.3d at 630. The court began its analysis by reference to then enacted Section 33-23-203. The *Christensen* court proceeded to analyze whether the language of the policy was consistent with Section 33-23-203 to prohibit stacking of the liability coverages of the separate policies. Ultimately, the court concluded "the policy is completely consistent with the prohibition found at Section 33-23-302, MCA, against stacking multiple policies which cover the same accident" because the plain language of the policy specifically did not permit stacking under the circumstances presented in the case. Id. at 630-31.

Since amending Section 33-23-203 to add the filing requirement of premium rate by insurers (Section 33-23-203(1)(c)), the Montana Supreme Court has not analyzed Section 33-23-203 as to liability coverages. However, relying upon the plain language of the anti-stacking statute and precedent from the Montana Supreme Court, several Montana state district court judges have concluded Section 33-23-203, as revised, applies to liability coverages with coverages stackable unless the insurer fully complies with the requirements of § 33-23-203. See Gunderson v. Safeco Ins. Co. of Ill., No. BDV-16-133 (Mont. 8th Judicial Dist. Sep. 1, 2016); Safeco Ins. Co. of Ill. v. Petersen, No. DV-29-14-70 (Mont. 5th Judicial Dist. Oct. 5, 2015); Great Northwest Ins. Co. v. Erickson, No. DV-13-32 (Mont. 22nd Judicial Dist. Jan. 15, 2014).

In *Safeco Ins. Co. of Ill. v. Petersen* ("*Peterson*"), the district court considered whether bodily injury liability coverage limits of two separate policies stacked. Looking to the plain language of the statute, the court concluded Section 33-23-203 applies to bodily injury liability coverages. The *Peterson* court reasoned that it is clear from the language of the statute that Section 33-23-203 applies to "insurance coverages available" under a "motor vehicle liability policy." Specifically, the district court stated, with reference to Section 33-23-204(2):

> The statute applies to "required" policies and "all additional coverages" "whether or not required." It then introduces a list of examples using the words "including, without limitation." The word "including" itself imparts a presumption that a following list is exemplary and not exhaustive. Adding the words "without limitation" only helps to emphasize the non-exhaustive nature of the subsequent list. Although redundant and cumbersome, the anti-stacking statute already applies to all policies and coverages that insure the owner of a motor vehicle.

Petersen, No. DV-29-14-70, *10 (internal citations and internal quotations removed from original). Further, as discussed above, the phrase "motor vehicle liability policy" as used in Section 33-23-203 is defined in Section 33-23-204(2) to include coverages required by Title 61, chapter 6, parts 1 and 3. Section 61-6-301 dictates that an owner of a motor vehicle in Montana "shall continuously

provide insurance against loss resulting from *liability* imposed by law for bodily injury or death or damage suffered by maintenance or use of a motor vehicle." Mont. Code Ann. § 61-6-301(1)(a) (emphasis added). Consequently, absent an expressed contrary intention, one cannot reasonably exclude liability coverages from the ambient of Section 33-23-203 because such coverage is "available," and is in fact required, under motor vehicle liability policies in Montana.

The precedential value of the holding of *Peterson* is bolstered by an earlier decision by the Montana district court in *Great Northwest Ins. Co. v. Erickson*, No. DV-13-32 (Mont. 22nd Judicial Dist. Jan. 15, 2014). In *Erickson*, Judge Jones compared uninsured ("UM"), UIM, and medical payment ("Med Pay") coverages with liability coverages. The insurer in *Erickson* posited that stacking is applicable only to UM, UIM, and Med Pay coverage because UM, UIM, and Med Pay coverages, as opposed to liability coverage, are "personal and portable." Id. at *6-7. The *Erickson* court disagreed with the insurer's position, concluding the payment of liability limits to a claimant is no different than the payment of UM, UIM, or Med Pay limits to claimants. Similar to UM, UIM, and Med Pay coverages, an insured can recover liability limits tied to more than one vehicle only when more than one of the insured's vehicles is involved in an accident. Id. at *7. Therefore, following the holding of *Hardy*, such scheme is against Montana public policy because it permits insurers receive valuable consideration for coverage that is not provided when separate premiums are charged for liability coverage for separate vehicles. See Hardy, 67 P.3d at 899. Second, the Erickson court concluded the liability coverage, like UM, UIM, and Med Pay, of the policy issued to the insured was personal and portable because the language of the policy reflected that coverage applied to the use of "*any* auto or trailer," including non-owned vehicles (e.g. rental cars). Erickson, No. DV-13-32, at *7. With these considerations, the *Erickson* court concluded Section 33-23-203 applies to liability coverages.

The Montana Supreme Court's application of pre-amended Section 33-23-203 to determine whether liability coverages stack in *Christensen*, coupled with the recent Montana district court decisions in *Erickson* and *Petersen*, undoubtedly demonstrate Section 33-23-203, as revised, applies to liability coverages in motor vehicle liability policies. Therefore, the Court is now tasked with determining whether QBE Insurance sufficiently complied with § 33-23-203 to preclude the stacking of liability coverages tied to the four vehicles insured under Keiser's policy.

In *Petersen*, Judge Tucker enumerated the four requirements to avoid stacking of coverages when separate premiums are paid by the insured in Montana:

> (1) the insurer must establish that the "premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy," Section 33-23-203(1), MCA,
>
> (2) the insurer must file the premium rates with the commissioner, Section 33-23-203(1)(c), MCA,
>
> (3) the insurer must "clearly inform or notify the insured in writing" that the "coverage from one policy or motor vehicle may [not] be added to the coverage of another policy or motor vehicle, Section 33-23-203(3), MCA, and
>
> (4) the provision must not violate public policy as set forth by the Supreme Court in *Hardy* and its progeny.

Petersen, No. DV-29-14-70, at *8. These requirements are conjunctive, meaning they all must be satisfied in order to preclude the stacking of coverages. Id. QBE Insurance contends it has satisfied all of these requirements; while BNSF and Coach America contend QBE has satisfied none of these requirements. The Court begins by addressing the second requirement.

Pursuant to Section 33-23-203(1)(c), QBE Insurance is required to file its premium rates with the Montana State Auditor, Commissioner of Securities and Insurance. Additionally, the premium rates filed must "actuarially reflect the limiting or coverage." See Mont. Code Ann. § 33-23-203(1)(c). QBE Insurance filed with the Court several filings it made to the Montana

Insurance Commissioner regarding loss costs and rating rules. See Docket Nos. 109-2 and 109-6. QBE Insurance maintains these filings demonstrate it satisfied the filing requirements of Section 33-23-203. Nonetheless, according to the affidavit of Jesse Laslovich, Chief Legal Counsel at the Office of the Montana State Auditor, Commissioner of Securities and Insurance, "QBE has not submitted information to the Office of the Montana State Auditor, Commissioner of Securities and Insurance, indicating that its Commercial Automobile Policies include unstacked rates for liability coverages." See Docket No. 111-5, p. 3.

From the record it is clear QBE Insurance, as well as ISO, the rating bureau to which QBE Insurance is a member, filed premiums rates related to UM, UIM, and Med Pay coverages. See Docket No. 111-5. However, after a thorough review of the record, and with great deference to the affidavit of Chief Legal Counsel for the Office of the Montana State Auditor, Commissioner of Securities and Insurance, the Court concludes there can be no genuine dispute that neither QBE Insurance, or ISO, filed premium rates as required by Section 33-23-203(1)(c). Since QBE Insurance has not satisfied one of the requirements outlined in *Petersen* to avoid stacking of liability coverages, the Court need not address the remaining requirements as these requirements are conjunctive. See Petersen, No. DV-29-14-70, at *8. Accordingly, QBE Insurance did not comply with Montana Code Annotated Section 33-23-203 to prevent stacking of liability coverages, and the liability coverages for each of Keiser's four vehicles insured pursuant to QBE Insurance's policy may be stacked with the stacked policy limit of $1.2 million, the aggregate of $300,000 liability limits for each of the four vehicles insured under the policy.

The Court also finds unpersuasive the line of cases cited by QBE Insurance for the proposition that BNSF, Coach America, Mack, and Burckhard lack standing to seek stacking of the liability coverages in the policy QBE Insurance issued to Keiser. QBE Insurance contends the

12

Defendants may not seek stacking of coverages because they are not insured under the policy at issue. See Hecht v. Mountain W. Farm Bureau Mut. Ins. Co., No. CV-15-40-GF-BMM (D. Mont. 2016); Lierboe v. State Farm Mut. Auto. Ins. Co., 73 P3d 800 (Mont. 2003); Chilberg v. Rose, 903 P.2d 1377 (Mont. 1995).

In *Chilberg*, the Montana Supreme Court considered whether the plaintiff could recover uninsured coverage limits applied separately to three cars. 903 P.2d at 1378. The plaintiff was a passenger in a vehicle, which was struck by another car, and the plaintiff was injured as a result of the collision. At the time of the accident, the insured of the vehicle had three cars insured by separate policies. The insurer paid the plaintiff, as a passenger of the insured vehicle, $30,000 under the uninsured motorist and medical payment coverages. However, the plaintiff requested the UM and Med Pay coverages from the other two vehicles of the insured be stacked. The *Chilberg* court concluded the plaintiff was not entitled to stack the UM and Med Pay coverages because the plaintiff was not an insured under the language of the policy. See Chilberg, 903 P.2d at 1380. The *Chilberg* Court specifically noted "the public policy underlying stacking, namely prohibiting insurers from defeating coverage which the insured reasonably expected, is not served by stacking the policies in this instant case." Id. Relying upon its decision in *Chilberg*, in 2002, the Montana Supreme Court determined a plaintiff could not stack Med Pay coverages for multiple policies when she was injured in a collision because there was no coverage under the second policy. Lierboe, 73 P3d at 803. In *Lierboe*, the Montana Supreme Court concluded the coverages of the policies could not stack because the accident was covered by only one policy.[2]

---

[2] The second policy at issue in *Lierboe*, stated there was no coverage for medical expenses "sustained while occupying or through being struck by a vehicle owned or leased by you or any relative, which is not insured under this coverage." Lierboe, 73 P3d at 802.

13

QBE Insurance maintains that the Defendants, like those in *Chilberg* and *Lierboe*, are not insureds under the policy QBE Insurance issued to Keiser and, therefore, may not seek stacking of coverages. However, the underlying holdings of *Chilberg* and *Lierboe* were limited by the Montana Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Gibson*, 163 P.3d 387 (Mont. 2007). The *Gibson* court specifically stated: "[O]ur analysis in *Lierboe* is limited in application to those instances in which a claimant seeks to stack coverages from a vehicle she does not own and from an insurance policy she did not purchase." Gibson, 163 P.3d at 391. In *Chilberg*, the heart of the court's rationale was that the public policy of prohibiting insurers from defeating coverage the insured reasonably expected was not served if a non-insured individual could stack UM coverages. However, the Court is convinced the outcome of the interplay between Montana's public policy and permitting only the insured to stack liability coverages is quite distinct from the outcome in *Chilberg* and *Lierboe*. In fact, limiting the individual who may seek stacking of liability coverages, as opposed to UM, UIM, and Med Pay coverages, to only insureds wholly defeats Montana's public policy of preventing insurers from denying coverage reasonably expected by insureds. Without question, liability coverages operate to indemnify an insured from third-party claims when the insured is liable for some loss. If the insured injures a third party, the insured reasonably expects liability coverages for those injuries, payable to the third party, in the amount for which the insured has paid premiums. Limiting the individual who may seek stacking of liability coverages, in many instances, may deny the insured a benefit for which the insured paid premiums for liability coverages. When the liability of the insured exceeds the liability coverage limits tied to one vehicle, the insured may become personally liable for the remaining liability. This is particularly true in cases such as the instant case when the insured is not a party to the suit. For these reasons, the Court declines to follow the decision of *Chilberg* and its progeny. Therefore,

the Court concludes the Defendants are not barred from seeking stacking of liability coverages in the policy issued by QBE Insurance to Keiser.

IV.     **CONCLUSION**

The Court has carefully reviewed the record, the parties' briefs, and the relevant case law. For the reasons set forth above, "QBE Insurance Corporation's Motion for Summary Judgment Re: Liability Stacking" (Docket No. 104) is **DENIED**, "BNSF Railway Company and CUSA ES, LLC's Motion for Partial Summary Judge Re: Stacking" (Docket No. 110) is **GRANTED**, and "QBE Insurance Corporation's Motion for Oral Argument on the Pending Summary Judgment Motions Re: Liability Stacking" (Docket No. 116) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 23rd day of August, 2017.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court